WO

WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Bernard Barton, Jr.,<br><br>　　　　　Defendant. | No. CR-19-08115-001-PCT-GMS<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

According to the agreement of the parties, the Court held a trial without a jury on August 10, 2021. The Defendant was charged with Abusive Sexual Contact with Force in violation 18 U.S.C. §§ 1153, 2244(a)(1) and 2246(3), Aggravated Sexual Abuse in violation of 18 U.S.C. §§ 1153, 2241(a), and 2246(2)(C), and Abusive Sexual Contact in violation of 18 U.S.C. §§ 1153, 2244(b), and 2246. (Docs. 62; 103.) At trial, the government presented evidence only on the Abusive Sexual Contact charge; the Court dismissed the charges for Abusive Sexual Contact with Force and Aggravated Sexual Abuse. The Court hereby makes its findings of fact and conclusions of law.

### FINDINGS OF FACT

**1.** Defendant Bernard Barton, Jr. ("Defendant") has some quantum of Indian blood and is a full 4/4 member of the Navajo Nation. The Navajo Nation is a federally recognized Indian Tribe within the District of Arizona.

**2.** On March 15, 2019, Joan McFarland, a public health nurse, conducted a

home visit to Defendant's home in Dilkon, Arizona located on the Navajo Nation Reservation.

3. Ms. McFarland was invited into the home by Defendant, and she entered and joined him in the living room. The purpose of the visit was to conduct a welfare check on Defendant, review Defendant's prescribed medications, take his vital signs, and ensure that he complained of no further complications from his recent surgery. The visit did not include an examination of the surgery site on his rectum.

4. Ms. McFarland began the visit sitting across from Defendant while he sat on the left side of the couch. Shortly after, she moved beside him on the right side of the couch so that he could hear her better and so she could take his vital signs. While Ms. McFarland took his vital signs, the Defendant began rubbing her leg. He then forcefully seized her head and kissed her, forcing his tongue into her mouth. Ms. McFarland did not consent to the kiss.

5. Ms. McFarland quickly began to gather her medical equipment to return it to her bag. When she turned her back on Defendant, he forced her to her knees by hitting her in the back of the knees. Defendant stood over Ms. McFarland with his legs on either side of hers and his arms around her body, preventing her from rising or moving away. Defendant placed his left hand was on Ms. McFarland's breast, both over and under her bra. Defendant placed his right hand inside Ms. McFarland's pants and inserted two or three fingers into her vagina. Ms. McFarland could feel the Defendant's penis on the back of her thigh rubbing against her.

6. During this encounter, Ms. McFarland was struggling with Defendant to keep her elastic-waist scrub pants around her waist. She did not consent to or invite any physical contact, and she asked him to stop.

7. At the time of the assault Ms. McFarland was either 63 or 64 years old, 5'3", and 112 pounds. Officer Ronald Bitah, a Patrol Sargent in Dilkon, testified that the Defendant was approximately 5'8" and weighed 180 pounds. Defendant was 80 years old at the time of the incident.

**8.**  Eventually, Defendant made a groaning sound and relaxed around her. At that point, she was able to extricate herself from his hold and leave the home. As she was leaving, she felt a wet spot on the back of her thigh.

**9.**  Shortly thereafter, Ms. McFarland was examined by Forensic Nurse Examiner Sienna St. John at Northern Arizona Care and Services After Assault. Ms. St. John recorded no acute or chronic signs of assault from Ms. McFarland's examination.

**10.**  Ms. St. John collected Ms. McFarland's clothes and several DNA swabs from her body. She also collected a buccal swab from Ms. McFarland's cheek as a DNA standard. Ms. St. John sealed and labeled these items in sealed evidence bags which were collected by law enforcement.

**11.**  Patrol Officer Ronald Bitah interviewed Ms. McFarland at the Care Center. He then proceeded to the Defendant's house to interview him.

**12.**  Officer Bitah was initially denied entry to the home by Defendant's family. When he was allowed to enter, Officer Bitah observed Defendant's family vacuuming and moving the furniture in the living room.

**13.**  Special Agent Brittany Stephenson collected four buccal swabs from Defendant. She explained the process to him in the presence of his counsel, confirmed his identity, and swabbed both sides of his cheeks.

**14.**  Samantha Smithart, a Forensic Scientist at the Arizona Department of Public Safety in Flagstaff, identified a white stain on Ms. McFarland's black pants. The stain was confirmed to be seminal fluid by both chemical test and microscopic exam. Ms. Smithart prepared the other samples for DNA testing. She testified that all of the evidence was properly labeled and sealed when she received it.

**15.**  Erin Higgins, a serologist and DNA analyst at the Arizona Department of Public Safety in Flagstaff, conducted the DNA analysis of the known standards in this case, the buccal swabs from Defendant and Ms. McFarland.

**16.**  Erin Daniel, a serologist and DNA analyst at the Arizona Department of Public Safety in Flagstaff, conducted the DNA analysis on the remaining evidence in this

1  case, including the swabs taken from Ms. McFarland's body and Ms. McFarland's black
2  scrub pants.

3   **17.**   Ms. Daniel detected male DNA from the swabs of Ms. McFarland's ribs and external genitalia. No further analysis of the swabs was conducted because of the low level of DNA.

   **18.**   Ms. Daniel detected male DNA from the swabs of Ms. McFarland's neck. A partial DNA profile was created from the swab. When compared to Defendant, the partial profile matched at a rate of 1 out of 295 Native American males.

   **19.**   Ms. Daniel created a complete DNA profile from the sperm on Ms. McFarland's pants. The profile matched Defendant at all 23 DNA locations. Ms. Daniel confirmed that the sample did not include any mixture of DNA from other locations.

## CONCLUSIONS OF LAW

**1.  Jurisdiction**

Section 2244 of the United States Code punishes abusive sexual contact within the territorial jurisdiction of the United States. 18 U.S.C. § 2244. Any Indian who commits abusive sexual contact under § 2244 within the Indian Country shall be tried in the same courts and subject to the same law and penalties as all other persons committing abusive sexual contact within the exclusive jurisdiction of the United States. 18 U.S.C. §§ 1153, 3242. A person is an Indian within the meaning of the Code if "the defendant (1) has some quantum of Indian blood and (2) is a member of, or is affiliated with, a federally recognized tribe. *United States v. Zepeda*, 792 F.3d 1103, 1106–07 (9th Cir. 2015).

Defendant has some quantum of Indian blood and is a member of the Navajo Nation. The Navajo Nation is a federally recognized tribe. Defendant violated § 2244 of the United States Code while located on the Navajo Nation Reservation. The Court therefore has jurisdiction pursuant to 18 U.S.C. § 1153.

**2.  Abusive Sexual Contact**

In order for the defendant to be found guilty of Abusive Sexual Contact, the Government must prove beyond a reasonable doubt that (1) the defendant knowingly had

sexual contact with the victim; (2) the sexual contact was without the victim's permission; and (3) the offense was committed on the Navajo Nation Reservation. 18 U.S.C. § 2244(b). In this case, "sexual contact" means "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246. Sexual contact includes both a defendant's intentional touching of the victim's genitalia as well as a defendant's intentional touching of his own genitalia to the victim. *United States v. Sagg*, 125 F.3d 1294, 1295 (9th Cir. 1997) (finding that sexual contact within the meaning of section 2246(3) occurred when defendant "took the sleeping child's hand, placed it around his penis, and ejaculated")."Knowingly" means that the "government must prove that the defendant knew he engaged in sexual contact." *United States v. Price*, 980 F.3d 1211, 1218 (9th Cir. 2019).

Defendant knowingly had sexual contact with Ms. McFarland without her permission. Defendant touched her breast both directly and through her clothing, inserted his fingers in her vagina, and rubbed his penis on the back of her leg through her clothing. Her testimony is corroborated by DNA evidence that Defendant ejaculated on the back of Ms. McFarland's pants. As Defendant restrained Ms. McFarland with his arms and legs during the sexual contact and continued touching her after she asked him to stop, the Court finds that the contact was intentional and without permission. The Court further finds that this restraint, and the fact that Defendant ejaculated on Ms. McFarland's pants, demonstrate that Defendant knew he was engaging in sexual contact and did so with the intent to gratify his own sexual desire. Finally, the contact occurred at a residence in Dilkon on the Navajo Nation Reservation.

## CONCLUSION

For the reasons stated above, the evidence at trial proves beyond a reasonable doubt that Defendant committed abusive sexual contact.

**IT IS THEREFORE ORDERED** finding Defendant guilty of Abusive Sexual Contact 18 U.S.C. §§ 1153, 2244(b), and 2246.

**IT IS FURTHER ORDERED** directing the Probation Department to prepare a presentence investigation report.

**IT IS FURTHER ORDERED** that the Sentencing for **November 1, 2021 at 11:00 a.m.** in Courtroom 601, Sandra Day O'Connor U.S. Federal Courthouse, 401 West Washington Street, Phoenix, Arizona 85003-2151 is **AFFIRMED**. Objections to the Presentence Report are due 14 days after the report is submitted. Any motions for departure or variance or sentencing memoranda are due 6 business days before sentencing, and responses are due 3 business days before sentencing.

Dated this 13th day of August, 2021.

_G. Murray Snow_
G. Murray Snow
Chief United States District Judge